1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LINDA PACKER, individually and on behalf of all others similarly situated,

                                        Plaintiff,

          v.

COINSTAR INC., PAUL DAVIS, GREGG A. KAPLA, and J. SCOTT DI VALERIO,

                                        Defendants.

No. 11-CV-00133

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

<u>JURY TRIAL DEMANDED</u>

## I.  INTRODUCTION

This is a federal class action on behalf of purchasers of the common stock of Coinstar Inc. ("Coinstar" or the "Company") between **October 28, 2010, and January 13, 2011,** inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). As alleged herein, defendants published a series of materially false and misleading statements which defendants knew and/or deliberately disregarded were false and materially misleading at the time of such publication, and which omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading.



## II.    OVERVIEW

1.      Throughout the Class Period, Coinstar provided automated retail solutions, owning and operating self-service coin-counting machines, which enable consumers convert their coins to bills, and automated kiosks that dispense digital video disks ("DVDs").  While the Company initially made a 40% investment in the DVD business, RedBox, in 2005, by 2009, Coinstar had purchased 100% of that company and ran it as a wholly owned subsidiary.  In fact, by the time the Class Period commenced, approximately 80% of the Company's revenues were generated through the sale of DVD's at the Company's RedBox kiosks.

2.      Throughout the Class Period, Coinstar presented itself as a company that was well adapted for managing the engine of its growth and profitability, its RedBox DVD kiosk business. In fact, despite changes in the DVD retail industry which required vendors to wait 28 days after the movie studios began distributing their titles directly to consumers via their own retail channels before carrying the titles, by the inception of the Class Period, Coinstar had issued very favorable forward guidance for 4Q:10 and full year 2011.  Predicated upon the Company's ability to effectively manage and control its inventory, upon defendants' abilities to effectively select titles and to select the proper formats of the DVDs it sold, and upon its ability to track consumer sales, at the inception of the Class Period, defendants issued revenue and earnings guidance of $391 million and between $0.65 and $0.69 per share for 4Q:10 and $1.7 to $1.85 billion and $2.60 to $3.10 per share for full year 2011.

3.      Throughout the Class Period, defendants represented to analysts and investors that the Company was operating according to plan and that defendants were successfully managing Coinstar's inventory – effectively removing its older inventory and updating it with new inventory that was in significant demand – and that the 28-day delay in obtaining movie titles from the movie studios was not having a material adverse impact on the Company's revenues, earnings, or gross margins.

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 2
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  420897 v1

4.      Either the representations concerning the financial condition of the Company, its forecasted earnings and revenues, and the effectiveness of defendants' inventory management systems and internal controls were patently untrue, or the systems and controls were providing defendants with information throughout the Class Period which defendants knew or deliberately disregarded was in stark contrast to the statements concerning the Company's strength and profitability.  Unbeknownst to investors, throughout the Class Period, the Company was suffering from a host of undisclosed adverse factors which were negatively impacting its business and which would cause it to report declining financial results, materially less than the market expectations defendants had caused and cultivated.  In particular:

- At all times during the Class Period, it was not true that the Company was continuing to operate according to plan and, from the inception of the Class Period, Coinstar was already evidencing a decline in sales as customers purchased fewer DVDs per purchase, and as poor inventory management and controls resulted in the Company removing material amounts of old inventory early in 4Q, such that Coinstar was immediately seeing a material adverse impact on revenues and gross margins.

- At all times during the Class Period, Coinstar was also not performing according to plan as lower sales of more expensive "Blue-ray" DVDs and poor title selection was immediately resulting in lower sales to customers.

- At all times during the Class Period, the Company was being adversely impacted by the 28-day delay that the movie studios had imposed on Coinstar – well before 4Q:10 – such that the Company was operating below expectations and such that Coinstar was not, and would not be, able to achieve guidance sponsored and/or endorsed by defendants.

- Throughout the Class Period, it was also not true that Coinstar contained adequate systems of internal operational or financial controls, such that Coinstar's public statements and reported guidance was either true, accurate, or reliable.

- Throughout the Class Period, the Company was also being adversely impacted by other long-term problems, such as its inability to compete with on-line video streaming providers, such as Netflix (which could deliver movies directly to consumers over the internet to their home televisions and computers), which despite its statements to the contrary, Coinstar had little or no ability to rectify.

- As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 3
Case No. 11-CV-00133



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

claim that Coinstar was operating according to plan, or that Coinstar could achieve guidance sponsored and/or endorsed by defendants.

5.      It was only at the end of the Class Period, however, that investors ultimately learned that the Company was operating far below expectations, and that the removal of old inventory early in 4Q:10, the 28-day delay imposed by the movie studios, and other problems related to the Company's inventory management were having and foreseeably would continue to have a material adverse impact on Coinstar's business, earnings, and gross margins.  In fact, on January 13, 2011, when defendants reported results for the fourth quarter and full year 2010, investors first learned that the Company would earn as little as $0.65 per share for the quarter on revenues of only $391 million, and not the analysts consensus estimate of $0.84 per share, on revenues of $427 million.  These disclosures had an immediate impact on the price of Coinstar stock, which declined almost 30% in the single trading day, or almost $15.50 per share, down to $41.50 from the prior day's close of almost $57.00 per share.

6.      This decline caused investors who purchased their shares during the Class Period material losses and substantial damages.  The chart below evidences the artificial inflation in the price of Company shares during the Class Period, as a result of defendants' publication of material false and misleading information about Coinstar, and the dramatic decline in the price of Company shares following the publication of defendants' corrective disclosures:



CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 4
Case No. 11-CV-00133



7.      Defendants were motivated to and did conceal the true operational and financial condition of Coinstar, and materially misrepresented and failed to disclose the conditions that were adversely affecting Coinstar throughout the Class Period, because:  (i) it enabled defendants to negotiate the acquisitions and/or state licenses for tens of thousands of new plan entrants, which contracts or license grants were substantially dependent upon the financial strength and well-being of the Company; (ii) it enabled defendants to register for sale with the SEC millions of shares of their privately held Company stock; and (iii) it enabled Coinstar insiders to sell millions of dollars of their privately held Coinstar shares while in possession of material adverse non-public information about the Company.

### III.      JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

10.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).  Coinstar maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

11.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

## IV.    PARTIES

2    **A.    Plaintiff**

3          12.    Plaintiff Linda Packer, as set forth in the accompanying certification, incorporated

4    by reference herein, purchased the common stock of Coinstar at artificially inflated prices during

5    the Class Period and has been damaged thereby.

6    **B.    Corporate Defendant**

7          13.    Defendant **COINSTAR, INC.** is a Delaware corporation with its principal place

8    of business at 1800 114th Avenue SE, Bellevue, WA 98004.  According to the Company's

9    profile, Coinstar provides automated retail solutions primarily in the United States, Canada,

10   Puerto Rico, the United Kingdom, Mexico, and Ireland.  The Company owns and operates self-

11   service coin-counting machines, which enable consumers convert their coins to bills, a gift card,

12   or an e-certificate; and installs and operates DVD kiosks, which enable costumers to rent or

13   purchase movies.  Coinstar offers its services at approximately 95,000 points of presence,

14   including supermarkets, drug stores, mass merchants, financial institutions, convenience stores,

15   restaurants, and money transfer agent locations.  As of December 31, 2009, it owned and

16   operated approximately 19,200 coin-counting machines and 22,400 DVD kiosks.  At the time the

17   Class Period commenced, approximately 80% of the Company's revenues were generated

18   through the sale of DVDs through the Company's kiosks.

19   **C.    Individual Defendants**

20         14.    Defendant **PAUL DAVIS** ("Davis") is, and during the Class Period was, Chief

21   Executive Officer of the Company.  During the Class Period, defendant Davis made materially

22   false and misleading statements about the Company and Certified the Company's SEC filings,

23   including Coinstar's Form 10-Q.

24         15.    Defendant **GREGG A. KAPLAN** ("Kaplan") is, and during the Class Period

25   was, President and Chief Operating Officer of the Company.  During the Class Period, defendant

26

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 6
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    Kaplan assisted in the preparation and filing of the Company's SEC filings, including Coinstar's

2    Form 10-Q.

3        16.    Defendant **J. SCOTT DI VALERIO** ("Di Valerio") is, and during the Class

4    Period was, Chief Financial Officer of the Company.  During the Class Period, defendant

5    Di Valerio made materially false and misleading statements about the Company and signed and

6    certified the Company's SEC filings, including Coinstar's Form 10-Q.

7        17.    The defendants referenced above in ¶¶ 14-16 are referred to herein as the

8    "Individual Defendants."

9        18.    The Individual Defendants, because of their positions with the Company,

10   possessed the power and authority to control the contents of Coinstar's quarterly reports, press

11   releases, and presentations to securities analysts, money and portfolio managers, and institutional

12   investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press

13   releases alleged herein to be misleading prior to or shortly after their issuance and had the ability

14   and opportunity to prevent their issuance or cause them to be corrected.  Because of their

15   positions with the Company, and their access to material non-public information available to

16   them but not to the public, the Individual Defendants knew that the adverse facts specified herein

17   had not been disclosed to and were being concealed from the public and that the positive

18   representations being made were then materially false and misleading.  The Individual

19   Defendants are liable for the false and misleading statements pleaded herein.

20       19.    Each of the defendants is liable as a participant in a fraudulent scheme and course

21   of business that operated as a fraud or deceit on purchasers of Coinstar common stock by

22   disseminating materially false and misleading statements and/or concealing material adverse

23   facts.  The scheme:  (i) deceived the investing public regarding Coinstar's business, operations,

24   and management, and the intrinsic value of Coinstar common stock; (ii) enabled defendants to

25   artificially inflate the price of Coinstar common stock; (iii) enabled Coinstar insiders to sell

26   millions of dollars of their privately held Coinstar shares while in possession of material adverse



1   non-public information about the Company; and (iv) caused plaintiff and other members of the

2   Class to purchase Coinstar common stock at artificially inflated prices.

3              V.      PLAINTIFF'S CLASS ACTION ALLEGATIONS

4       20.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

5   Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

6   otherwise acquired the common stock of Coinstar between **October 28, 2010, and January 13,**

7   **2011**, inclusive (the "Class") and who were damaged thereby.  Excluded from the Class are

8   defendants, the officers and directors of the Company, at all relevant times, members of their

9   immediate families and their legal representatives, heirs, successors, or assigns and any entity in

10   which defendants have or had a controlling interest.

11       21.     The members of the Class are so numerous that joinder of all members is

12   impracticable.  Throughout the Class Period, Coinstar common stock was actively traded on the

13   Nasdaq.  As evidence of this, as of October 22, 2010, the Company had over 31.672 million

14   shares of common stock issued and outstanding.  While the exact number of Class members is

15   unknown to plaintiff at this time and can only be ascertained through appropriate discovery,

16   plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record

17   owners and other members of the Class may be identified from records maintained by Coinstar

18   or its transfer agent and may be notified of the pendency of this action by mail, using the form of

19   notice similar to that customarily used in securities class actions.

20       22.     Plaintiff's claims are typical of the claims of the members of the Class as all

21   members of the Class are similarly affected by defendants' wrongful conduct in violation of

22   federal law that is complained of herein.

23       23.     Plaintiff will fairly and adequately protect the interests of the members of the

24   Class and has retained counsel competent and experienced in class and securities litigation.

25

26



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

24.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Coinstar; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VI.     SUBSTANTIVE ALLEGATIONS

### A.     Defendants' Materially False and Misleading Statements Made During the Class Period

26.     **3Q:10 Results Announced:  Guidance Affirmed**.  On October 28, 2010, the inception of the Class Period, defendants published a release announcing purported results for the third quarter of 2010, the period ended September 30, 2010.  This release also stated, in part, the following:

> Coinstar, Inc. Announces 2010 Third Quarter Results
>
> Revenue Growth of 42% Drives 74% Growth in Earnings Per Share from Continuing Operations
>
> Company Provides 2011 Full Year Guidance

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 9
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   BELLEVUE, Wash., Oct. 28 /PRNewswire-FirstCall/ -- Coinstar,
    Inc. (Nasdaq:CSTR - News) today announced financial results for
2   the third quarter and nine months ended Sept. 30, 2010.

3                               *    *    *

4   Third quarter financial highlights included:

5   *  Revenue                                        $380.2 million

6   *  Income from operations                         $ 46.2 million

7   *  Adjusted EBITDA from continuing operations
       (See Appendix A)                               $ 80.5 million
8
9   *  Diluted earnings per share from continuing
       operations                                     $ 0.66

10  *  Diluted earnings per share attributable to
       Coinstar, Inc.                                 $ 0.60
11
12  *  Net cash provided by operating activities
        from continuing operations                    $ 65.0 million

13  *  Free cash flow from continuing operations
       (See Appendix A)                               $ 16.8 million
14
                                *    *    *
15
16  Revenue for the third quarter of 2010 increased 42.0% to $380.2
    million compared with the third quarter of 2009, driven primarily
    by growth in DVD revenue, which increased 54.2% to $305.5
17  million, and by Coin revenue which grew 7.3% to $74.7 million.

18  Income from operations for the third quarter of 2010 was $46.2
    million, which resulted in an operating margin of 12.1%, including
19  $1.4 million in share-based payments expense related to the
    company's agreements with Sony Pictures Home Entertainment
20  (Sony) and Paramount Home Entertainment Inc.  This compares
    with income from operations of $28.7 million and an operating
21  margin of 10.7% in the third quarter of 2009 that included $1.1
    million in share-based payments expense related to the Sony
22  agreement.

23  Income from continuing operations for the third quarter of 2010
    was $21.4 million, or diluted earnings per share of $0.66,
24  compared with $11.6 million, or $0.38, in the third quarter of 2009.

25  Coinstar recorded a loss from discontinued operations of $1.9
    million, net of tax, or a loss of $0.06 per share, in the third quarter.
26  Coinstar agreed to sell its Money Transfer business to Sigue

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 10
Case No. 11-CV-00133

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Corporation in the third quarter and all prior periods have been adjusted to reflect discontinued operations.

Net income attributable to Coinstar, Inc. for the third quarter of 2010, which includes both continuing and discontinued operations, was $19.5 million, or diluted earnings per share of $0.60. This compares with $41.4 million, or diluted earnings per share of $1.34, in the third quarter of 2009, which included a pre-tax loss on disposal of $49.8 million and a one-time tax benefit of $82.2 million related to the sale of Coinstar's entertainment services business.

27.    Regarding the purported performance of the Company at that time, the October 28, 2010, release also quoted defendants Davis and Di Valerio, in part, as follows:

Coinstar's exceptional third quarter performance demonstrates the strength of our leading Coin and DVD businesses, and our ability to execute, drive operational efficiencies and deliver what our consumers want," said Paul Davis, chief executive officer of Coinstar, Inc. "We are confident in our growth prospects and believe we are in a great position to continue creating value through our automated retail strategy."

*    *    *

"Focus on our consumers, our partners and growing profitably continued to drive strong growth at the top and bottom line," said J. Scott Di Valerio, chief financial officer of Coinstar, Inc. "Our solid financial and operating performance enables us to invest for the future and focus on returns for our shareholders.  Looking to 2011, we are excited about the opportunities ahead across our businesses."

28.    In addition to the foregoing, the October 28, 2010, release also provided purported guidance for the remainder of 2010 and full year 2011, in part, as follows:

Guidance

For the 2010 full year, Coinstar management updated guidance and now expects:

*    Consolidated revenue between $1.460 billion and $1.485 billion;

*    EBITDA between $291 million and $297 million;

*    GAAP EPS from continuing operations between $2.14 and $2.20 on a fully diluted basis;



       *      Free cash flow from continuing operations between $100 million and $110 million.

For the 2010 fourth quarter, Coinstar management expects:

       *      Consolidated revenue between $415 million and $440 million;

       *      EBITDA between $84 million and $90 million;

       *      GAAP EPS from continuing operations between $0.79 and $0.85 on a fully diluted basis.

Coinstar management is providing an initial view of 2011 with the following guidance for the 2011 full year:

       *      Consolidated revenue between $1.80 billion and $1.95 billion;

       *      EBITDA between $350 million and $380 million;

       *      GAAP EPS from continuing operations between $3.00 and $3.50 on a fully diluted basis;

       *      Free cash flow from continuing operations between $175 million and $200 million.

29. Following the publication of the Company's release, the same day on October 28, 2010, the Associated Press reported, in part, the following:

Coinstar Profit Beats Estimates as DVD Rentals Surge

Coinstar Inc., owner of the Redbox movie-rental kiosks, reported third-quarter profit that beat analysts' estimates as DVD revenue surged. The shares rose after the company's 2011 profit forecast also topped projections.

Profit from continuing operation rose to $21.4 million, or 66 cents a share, from $11.6 million, or 38 cents, a year earlier. Coinstar said today in a statement. Profit beat the 50- cent average of seven analysts' estimates compiled by Bloomberg.

The company, along with Netflix Inc., will continue to profit from physical rentals of DVDs because they offer consumers better value than video-on-demand or rentals available through cable or satellite services, said Michael Pachter, an analyst at Wedbush Securities in Los Angeles who has an "outperform" rating on Coinstar's shares. The company plans to expand into online service next year.

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 12
Case No. 11-CV-00133



"It's them and Netflix; they're going to divide the world," Pachter said in an interview. "Because Coinstar offers lower rental costs than VOD at slightly less convenience, there's a lot of room for these guys to grow."

Sales rose 42 percent to $380.2 million, the Bellevue, Washington-based company said, shy of the $381.8 million average of 12 estimates. DVD revenue jumped 54 percent.

\*   \*   \*

**Taking Customers**

Coinstar, with about 28,500 DVD kiosks, is picking up customers as Blockbuster Inc. and Movie Gallery close stores. Movie Gallery, based in Dothan, Alabama, filed for bankruptcy protection in February and is liquidating. Blockbuster, the largest movie-rental chain, also declared bankruptcy and is closing some outlets as it seeks to restructure its debts.

This quarter, Coinstar forecasts revenue will rise to between $415 million and $440 million and earnings will increase to 79 cents to 85 cents a share. Analysts were projecting 77 cents on sales of $422.5 million, the average of eight estimates compiled by Bloomberg.

In a filing, Coinstar projected 2011 profit of $3 to $3.50 a share from continuing operations on revenue of $1.8 billion to $1.95 billion. On that basis, the company was expected by analysts to earn $2.93 a share on sales of $1.8 billion, the average of 10 analysts' estimates compiled by Bloomberg.

**Digital Strategy**

Coinstar plans to form a partnership in 2011 with an existing player in digital downloads to save money on building its own infrastructure and gain faster access to content, Chief Executive Officer Paul Davis said on a conference call.

"It's really getting down to choosing the right partner," said Davis, who declined to answer questions about the exact timing of its planned digital rollout.

Investors have been waiting for Coinstar to outline a strategy for responding to consumers' growing preference for downloading videos, according to Paul Coster, a JPMorgan Chase & Co. analyst who rates the stock "neutral."

Netflix, which mails DVDs and streams movies, said last week it signed up 1.93 million new subscribers in the third quarter, raising the total to 16.9 million.

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 13
Case No. 11-CV-00133



1

2

> "DVD kiosk revenue opportunity will peak in 2011 owing to loss of share of the home entertainment market to online video services," Coster wrote in an Oct. 25 note to investors.

3

4

5

> Novato, Calif.-based Sonic Solutions provides turnkey streaming service for retailers Best Buy Co. and Sears Holding Corp., while online provider Amazon.com Inc. offers DVD purchases by mail and download.

6

7

> Coinstar has expanded its test of video-game rentals through its kiosks to 4,500 locations in the Southeast, Southwest and Midwest from 200 previously, company executives said on the call.

8

9

> Including discontinued operations in both periods, Coinstar reported net income fell to $19.5 million, or 60 cents a share, from $41.4 million, or $1.34, a year earlier.

10

     30.    Following the publication of defendants release and the positive media reports

11

that followed, on October 29, 2010, shares of Coinstar increased substantially.  That day, shares

12

of the Company traded up to almost $58.50 per share, before closing the trading day at $57.58

13

per share, trading on extremely heavy volume of over 11.273 million shares traded.  This

14

represented an increase of almost 25% over the prior day's closing price of $46.26 per share.

15

    **31.    3Q:10 Form 10-Q**.  As shares of the Company traded to levels artificially inflated

16

by the publication of defendants' materially false and misleading statements, also on October 28,

17

2010, defendants filed with the SEC the Company's 3Q:10 Form 10-Q, for the quarter ended

18

September 30, 2010, signed by defendant Di Valerio and certified by defendants Davis and

19

Di Valerio.  In addition to making substantially similar statements concerning the Company

20

operations, as had been published previously, the 3Q:10 Form 10-Q also provided statements

21

concerning the Company's Basis of Presentation and Principles of Financial Consolidation, in

22

part, as follows:

23

> NOTE 1:  BASIS OF PRESENTATION AND PRINCIPLES OF CONSOLIDATION

24

> The consolidated financial information included herein has been prepared by Coinstar, Inc. without audit, pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC").  The unaudited consolidated financial statements of Coinstar included herein reflect all adjustments, consisting only of normal

25

26



recurring adjustments that, in the opinion of management, are necessary to present fairly our consolidated financial position, results of operations and cash flows for the periods presented. The financial information as of December 31, 2009 is derived from our 2009 Annual Report on Form 10-K, however, certain amounts in the prior period financial statements have been reclassified to conform to our current period presentation. The consolidated financial statements should be read in conjunction with the consolidated financial statements and the notes thereto included in our 2009 Annual Report on Form 10-K. The results of operations for the interim periods presented are not necessarily indicative of the results to be expected for the full year.

32. **Controls**. The Company's 3Q:10 Form 10-Q also contained representations which attested to the purported effectiveness and sufficiency of its controls and procedures, as follows:

Item 4. Controls an d Procedures

Evaluation of Disclosure Controls and Procedures

We maintain a set of disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")). Management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this report and has determined that such disclosure controls and procedures are effective.

Changes in Internal Control over Financial Reporting

We also maintain a system of internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act). No changes in our internal control over financial reporting occurred during the quarter ended September 30, 2010 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

33. **Certifications**. In addition to the foregoing, the Company's 3Q:10 Form 10-Q also contained certifications by defendants Davis and Di Valerio, that attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

**CERTIFICATION PURSUANT TO SECTION 302(a) OF
THE SARBANES-OXLEY ACT OF 2002**

1. I have reviewed this Form 10-Q of Coinstar, Inc.

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 15
Case No. 11-CV-00133



2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)      designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

b)      designed such internal controls over financial reporting, or caused such internal controls over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)      evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

d)      disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect,

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 16
Case No. 11-CV-00133



HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

       a)      all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

       b)      any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: October 28, 2010

/s/ PAUL D. DAVIS
Paul D. Davis
Chief Executive Officer

\*   \*   \*

Date: October 28, 2010

/s/ J. SCOTT DI VALERIO
J. Scott Di Valerio
Chief Financial Officer

**CERTIFICATION OF CHIEF EXECUTIVE OFFICER
PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO SECTION 906
OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Quarterly Report of Coinstar, Inc. (the "Company") on Form 10-Q for the period ended September 30, 2010 as filed with the Securities and Exchange Commission on the date hereof (the "Form 10-Q"), I, Paul D. Davis, Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that:

      (1)      The Form 10-Q fully complies with the requirements of Section 13(a) or 15(d) of the

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 17
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  420897 v1

Securities Exchange Act of 1934, as amended (15 U.S.C. 78m or 78o(d)); and

(2)    The information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

Dated: October 28, 2010

/s/   PAUL D. DAVIS
Paul D. Davis
Chief Executive Officer

### CERTIFICATION OF CHIEF FINANCIAL OFFICER PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the Quarterly Report of Coinstar, Inc. (the "Company") on Form 10-Q for the period ended September 30, 2010 as filed with the Securities and Exchange Commission on the date hereof (the "Form 10-Q"), I, J. Scott Di Valerio, Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to §906 of the Sarbanes-Oxley Act of 2002, that:

(1)    The Form 10-Q fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended (15 U.S.C. 78m or 78o(d)); and

(2)    The information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

Dated: October 28, 2010

/s/   J. SCOTT DI VALERIO
J. Scott Di Valerio
Chief Financial Officer

34.    The statements contained in Coinstar's October 28, 2010, release and those statements contained in the Company's 3Q:10 Form 10-Q, referenced above, were each materially false and misleading when made, and were known by defendants to be false or were deliberately disregarded as such thereby, for the following reasons, among others:

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 18
Case No. 11-CV-00133



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

(a)     At all times during the Class Period, it was not true that the Company was continuing to operate according to plan and from the inception of the Class Period, Coinstar was already evidencing a decline in sales as customers purchased fewer DVDs per purchase, and as poor inventory management and controls resulted in the Company removing material amounts of old inventory early in 4Q, such that Coinstar was immediately seeing a material adverse impact on revenues and gross margins;

(b)     At all times during the Class Period, Coinstar was also not performing according to plan as lower sales of more expensive "Blue-ray" DVDs and poor title selection was immediately resulting in lower sales to customers;

(c)     At all times during the Class Period, the Company was being adversely impacted by the 28-day delay that the movie studios had imposed on Coinstar well before 4Q:10, such that the Company was operating below expectations and such that Coinstar was not, and would not be, able to achieve guidance sponsored and/or endorsed by defendants;

(d)     Throughout the Class Period, it was also not true that Coinstar contained adequate systems of internal operational or financial controls, such that Coinstar's public statements and reported guidance was either true, accurate, or reliable;

(e)     Throughout the Class Period, the Company was also being adversely impacted by other long-term problems, such as its inability to compete with on-line video streaming providers, such as Netflix (which could deliver movies directly to consumers over the internet to their home televisions and computers), which despite its statements to the contrary, Coinstar had little or no ability to rectify; and

(f)     As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that Coinstar was operating according to plan, or that Coinstar could achieve guidance sponsored and/or endorsed by defendants.



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

35.     Similar to the media reports that were published on or about October 28, 2010, following the publication of the Company's press release and 3Q:10 Form 10-Q, on November 10, 2010, Forbes.com also issued a very positive report about Coinstar, based substantially upon these prior reports that stated, in part, the following:

Coinstar's Aggressive Growth Is Worth Your Spare Change

Coinstar (CSTR – Snapshot Report), best known for its coin-counting kiosks in many convenience and grocery stores, is coming off of its seventh consecutive earnings surprise, which sent shares to all-time highs.

The continual earnings boosts are in part due to the company's ownership of the increasingly popular redbox kiosks, a self-service DVD vendor.  There are now roughly 40,000 redbox kiosks under Coinstar's management nationwide.

While the valuations look high initially, with earnings expected to more than triple investors do not mind paying a premium.

Coinstar said its top line grew 42% , to $380 million, during the third quarter, which was announced on Oct 28.  The cash cow remains to be the DVD revenue, rising over 54% to $306 million.

Investors were more than happy with earnings per share coming in 15 cents higher than expected, at 66 cents.  This was Coinstar's seventh consecutive earnings surprise.

Special Offer:  Make the most out of gold's phenomenal move higher but don't get left holding the bag when it's time to run.  Click here for instant access to market timing analysis and specific gold, silver and hard asset model portfolios in Curtis Hesler's Professional Timing Service.

**Estimates Climbing**

CEO Paul Davis described the results as exceptional and went on to raise guidance, which spurred analysts to do the same.

After 8 upward revisions the Zacks Consensus Estimate for fiscal 2010 is up 24 cents, to $2.19.  Next year's projections are up 52 cents on average, to $3.32.

Given these targets, earnings are expected to more than triple by the end of 2011, given the $1.06 earned in 2009.

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 20
Case No. 11-CV-00133



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  420897 v1

**Valuations**

Shares of CSTR are not quite the bargain that the DVD rentals are, but at 19 times the 2011 estimates and with a PEG of 1.4, it is not overpriced either.

In fact, these valuations are lower than the historic averages for CSTR.  Also, as long as the growth story keeps improving, investors have not trouble buy up shares.

Following the earnings release, the stock quickly jumped to an all-time high after the news.  CSTR is taking a breather right now, but as investors get used to the higher price, it should continue higher.

36.     The publication of defendants' materially false and misleading statements had their intended effect and, throughout the Class Period, shares of the Company continued to trade at artificially inflated levels.  The chart below evidences the artificial inflation in the price of Coinstar shares during the Class Period, as a result of defendants' materially false and misleading statements:



37.     In fact, rather than disclose the true financial and operational condition of the Company at that time, throughout the Class Period, defendants took advantage of the artificial inflation in the price of Company shares and liquidated significant amounts of their privately held Coinstar common stock in the open market.  The chart below evidences the millions of

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 21
Case No. 11-CV-00133



1    dollars in stock sales and dispositions made by the Company's officers – including almost

2    $1 million sold by defendant Davis in early November 2010 – and its directors :

### INSIDER TRANSACTIONS REPORTED – DURING CLASS PERIOD

| Date | Insider | Shares | Sale / Disposition | Value |
|---|---|---|---|---|
| Nov 23, 2010 | O CONNOR DANIEL W<br>Director | 3,900 | $62.25 - $62.79 per share. | $   244,000 |
| Nov 18, 2010 | HALE TIMOTHY J.<br>Officer | 1,900 | $59.27 per share. | $   112,613 |
| Nov 12, 2010 | RENCH DONALD R<br>Officer | 17,265 | $60.99 per share. | $ 1,052,992 |
| Nov 12, 2010 | ESKENAZY DAVID M<br>Director | 3,500 | $63.29 per share. | $   221,515 |
| Nov 11, 2010 | ESKENAZY DAVID M<br>Director | 3,033 | $62.36 per share. | $   189,137 |
| Nov 10, 2010 | ESKENAZY DAVID M<br>Director | 500 | $61.50 per share. | $    30,750 |
| Nov 10, 2010 | SZNEWAJS ROBERT D<br>Director | 600 | $60.10 per share. | $    36,060 |
| Nov 9, 2010 | ESKENAZY DAVID M<br>Director | 2,000 | $61.05 per share. | $   122,100 |
| Nov 9, 2010 | SZNEWAJS ROBERT D<br>Director | 2,300 | $61.75 per share. | $   142,025 |
| Nov 8, 2010 | WOODARD RONALD B<br>Director | 12,500 | $61.56 per share. | $   769,500 |
| Nov 3, 2010 | RENCH DONALD R<br>Officer | 11,792 | $59.03 per share. | $   696,081 |
| Nov 2, 2010 | AHITOV ARIK<br>Director | 6,529 | $58.35 per share. | $   380,967 |
| Nov 2, 2010 | DAVIS PAUL D<br>Officer | 17,019 | $58 per share. | $   987,102 |
| Nov 2, 2010 | RENCH DONALD R<br>Officer | 3,000 | $58.70 per share. | $   176,100 |

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 22
Case No. 11-CV-00133



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

38.     Moreover, on December 27, 2010, with only three days left in the fourth quarter, defendants published a release that announced that, on February 3, 2011, defendants would announce results for the fourth quarter and full year 2010.  Without making any adjustments to guidance at that time, defendants stated, in part, the following:

> Coinstar, Inc. to Report 2010 Fourth Quarter and Full Year
> Financial Results on February 3, 2011
>
> BELLEVUE, Wash., Dec. 27, 2010 /PRNewswire-FirstCall/ --
> Coinstar, Inc. (Nasdaq:CSTR - News) will report financial results
> for the 2010 fourth quarter and full year on Thursday, February 3,
> 2011, after the market close.  Coinstar's Chief Executive Officer
> Paul Davis and Chief Financial Officer J. Scott Di Valerio will
> host a conference call at 2:00 p.m. PST (5:00 p.m. EST) to review
> the results.

## THE TRUE FINANCIAL AND OPERATIONAL
## CONDITION OF COINSTAR IS BELATED DISCLOSED

39.     On January 13, 2011, following the close of trading, defendants shocked investors when Coinstar issued a release announcing financial and operational results well below analysts' expectations and previous guidance sponsored and endorsed by defendants.  This release stated, in part, the following:

> Coinstar, Inc. Announces Preliminary 2010 Fourth Quarter Results
> and Updated Full Year 2011 Guidance
>
> BELLEVUE, Wash., Jan. 13, 2011 /PRNewswire/ -- Coinstar, Inc.
> (Nasdaq: CSTR) today announced certain preliminary financial
> results for the fourth quarter ended December 31, 2010.  The
> company expects revenue for the fourth quarter of 2010 to increase
> 31% year over year to $391 million, compared with previous
> fourth quarter 2010 guidance in the range of $415 million to $440
> million.
>
> The company expected stronger performance from the titles
> scheduled for release during the 2010 fourth quarter holiday
> season, particularly from the slate of 28-day delay and higher-
> priced Blu-ray™ titles, despite a 16% lower box office for
> scheduled releases compared with those in fourth quarter 2009.  In
> addition, in anticipation of demand for new releases that did not
> materialize, redbox removed older inventory early, impacting
> revenue and gross margin.  Further, redbox consumers utilized
> "rent and return anywhere" to a higher level than expected, which



caused temporary imbalances in available titles across the kiosk
network.

As a result, the company expects fourth quarter 2010 GAAP
earnings per share (EPS) from continuing operations between
$0.65 and $0.69 on a fully diluted basis, compared with guidance
in the range of $0.79 to $0.85.  GAAP EPS includes a reduction of
$0.02 per share due to the expected increase in diluted share count
of 1.3 million as a result of convertible debt and option exercise
dilution and $0.02 per share due to expected higher share based
expense related to the higher share price at the end of the quarter.

Paul Davis, chief executive officer of Coinstar, Inc., said, "Overall,
the performance of the redbox business during the fourth quarter
was not in line with our forecast.  This was redbox's first holiday
season with 28-day delayed titles, and we underestimated the
impact that the delay would have on demand during the fourth
quarter.  We also expected much better performance from Blu-ray
and had purchased to a higher level of demand.  While consumer
visits to the kiosks remained strong, the number of movies per
visit, or basket size, was lower than planned.  We have already
taken a number of decisive steps to better align content purchases
with our consumers' behavior, including offering more day and
date titles and better allocating Blu-ray titles to high demand areas.
In addition, since inventory migration reflects the popularity of our
rent and return anywhere capability, we have made adjustments in
our field processes to minimize the impact of higher levels of
migration on overall rentals.  While some measures such as
changes in purchasing take longer to impact financial performance,
early results give us confidence that we have begun taking the right
steps to address these issues and position the business for further
success, which we will discuss further on our earnings call on
February 3.

*    *    *

The company expects fourth quarter adjusted EBITDA from
continuing operations between $78 million and $82 million, a year
over year increase of 38.8% to 45.9%, compared with guidance in
the range of $84 million to $90 million.  EBITDA was impacted by
lower revenue and gross margin.

Coinstar also has revised its initial outlook for full year 2011 and
now expects revenue between $1.70 billion and $1.85 billion,
adjusted EBITDA from continuing operations between $325
million and $355 million, and GAAP EPS from continuing
operations between $2.60 and $3.10, based on a share count of
33.3 million.

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 24
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  420897 v1

40.     Following the publication of defendants' corrective disclosure on January 13, 2011, shares of the Company were immediately halted from trading: however, when shares of the Company resumed trading the following day, on January 14, 2011, Coinstar stock declined materially, falling to about $41.50 per share, down almost $15.50 per share, or over 27%, from the prior days close of almost $57.00 per share.  Following the collapse in the price of Company shares, on January 14, 2011, TheStreet.com also published a reported that included analysts' reactions, in part, as follows:

> Coinstar Plunges on Forecast Cut
>
> NEW YORK (TheStreet) -- Coinstar(CSTR) continues to plunge after the company cut its guidance for the remainder of the year.
>
> Shares are tumbling 25.5% to $42.45 in Friday morning trading, after falling more than 30% in after-hours activity on Thursday. Shares were temporarily halted Thursday evening to allow investors to "digest the information," according to a company spokesperson.  Digest they did.
>
> Coinstar, which operates Redbox DVD kiosks, said it now expects fourth-quarter profit in the range of 65 cents to 69 cents a share, from prior outlook of 79 cents to 85 cents.
>
> This comes as its preliminary fourth-quarter increased less than expected, reaching $391 million, compared with a forecast between $415 and $440 million.
>
> It also lowered its 2011 guidance to $2.60 to $3.10 a share, from $3 to $3.50.
>
> ***"Given the apparent temporary nature of the factors causing the fourth-quarter shortfall, we were surprised that the company also lowered 2011 guidance," Needham analyst Charles Wolf***, wrote in a note.
>
> *     *     *
>
> One of the biggest concerns is that Redbox has yet to reveal a viable strategy for providing streaming service.  ***"In our opinion, designing a profitable route to streaming is the company's number one challenge," Wolf continued.  "Indeed, we don't see any path the company can take to get from here to there."***
> [Emphasis added.]



HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

41.     The market for Coinstar's common stock was at all relevant times open, well-developed, and efficient.  As a result of these materially false and misleading statements and failures to disclose, Coinstar common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Coinstar common stock based upon the integrity of the market price of Coinstar common stock and market information relating to Coinstar, and have been damaged thereby.

42.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Coinstar common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company and its business and operations, as alleged herein.

43.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Coinstar's business, prospects, and operations.  These material misstatements and omissions had the effect of creating in the market an unrealistically positive assessment of Coinstar and its business, prospects, and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## VII.   CAUSATION AND ECONOMIC LOSS

44.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market, and a course of conduct that artificially inflated the price of Coinstar's

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 26
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

common stock and operated as a fraud or deceit on Class Period purchasers of Coinstar's common stock by misrepresenting the Company's financial results. Over a period of approximately twelve months, defendants improperly inflated the Company's financial results. Ultimately, however, when defendants' prior misrepresentations and fraudulent conduct came to be revealed and was apparent to investors, Coinstar's common stock declined precipitously – evidence that the prior artificial inflation in Coinstar's security prices was eradicated.  As a result of their purchases of Coinstar common stock during the Class Period, plaintiff and other members of the Class suffered economic losses, *i.e.*, damages under the federal securities laws.

45.     By improperly characterizing the Company's financial results and misrepresenting its prospects, the defendants presented a misleading image of Coinstar's business and future growth prospects.  During the Class Period, defendants repeatedly emphasized the ability of the Company to monitor and control its operations and expenses, and consistently reported results within the range of guidance sponsored or endorsed by the Company.  These claims caused and maintained the artificial inflation in Coinstar's common stock prices throughout the Class Period and until the truth about the Company was ultimately revealed to investors.

46.     Moreover, the decline in Coinstar's stock price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud being revealed to investors and to the market.  The timing and magnitude of Coinstar's stock price decline negates any inference that the losses suffered by plaintiff and the other members of the Class was caused by changed market conditions, macroeconomic or industry factors, or even Company-specific facts unrelated to defendants' fraudulent conduct.  During the same period in which Coinstar's share price fell over 43% as a result of defendants' fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged.

47.     The economic loss, *i.e.*, damages suffered by plaintiff and other members of the Class, was a direct result of defendants' fraudulent scheme to artificially inflate the price of



Coinstar's common stock and the subsequent significant decline in the value of the Company's common stock when defendants' prior misstatements and other fraudulent conduct was revealed, as evidenced by the chart below:



## VIII.  ADDITIONAL SCIENTER ALLEGATIONS

48.    As alleged herein, defendants acted with scienter in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Coinstar, their control over, and/or receipt and/or modification of Coinstar's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Coinstar, participated in the fraudulent scheme alleged herein.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

49.     Defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company because their scheme and illegal course of conduct: (i) deceived the investing public regarding Coinstar's business, operations, and management and the intrinsic value of Coinstar common stock; (ii) enabled defendants to artificially inflate the price of Coinstar common stock; (iii) enabled Coinstar insiders to sell millions of dollars of their privately held Coinstar shares while in possession of material adverse non-public information about the Company; and (iv) caused plaintiff and other members of the Class to purchase Coinstar common stock at artificially inflated prices.

## A.     Applicability of Presumption of Reliance:  Fraud-On-The-Market Doctrine

50.     At all relevant times, the market for Coinstar's common stock was an efficient market for the following reasons, among others:

(a)     Coinstar's stock met the requirements for listing on, and was listed and actively traded on, the Nasdaq national market exchange, a highly efficient and automated market;

(b)     As a regulated issuer, Coinstar filed periodic public reports with the SEC and the Nasdaq;

(c)     Coinstar regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Coinstar was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 29
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  420897 v1

51.     As a result of the foregoing, the market for Coinstar common stock promptly digested current information regarding Coinstar from all publicly available sources and reflected such information in Coinstar common stock prices. Under these circumstances, all purchasers of Coinstar common stock during the Class Period suffered similar injury through their purchase of each of Coinstar common stock at artificially inflated prices and a presumption of reliance applies.

## IX.     NO SAFE HARBOR

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Coinstar who knew that those statements were false when made.

## X.     BASIS OF ALLEGATIONS

53.     Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by Coinstar, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## COUNT I

### VIOLATION OF SECTION 10(B) OF
### THE EXCHANGE ACT AND RULE 10B-5
### PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     During the Class Period, defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public regarding Coinstar's business, operations, and management and the intrinsic value of Coinstar common stock; (ii) enable defendants to artificially inflate the price of Coinstar common stock; (iii) enable Coinstar insiders to sell millions of dollars of their privately held Coinstar shares while in possession of material adverse non-public information about the Company; and (iv) cause plaintiff and other members of the Class to purchase Coinstar common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

56.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Coinstar's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Coinstar as specified herein.

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 31
Case No. 11-CV-00133

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  420897 v1

58.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Coinstar's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Coinstar and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Coinstar common stock during the Class Period.

59.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or deliberately disregarded was materially false and misleading.

60.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain and to disclose such facts.  Such defendants' material misrepresentations and/or omissions were done knowingly or deliberately for the purpose and effect of concealing

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 32
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    Coinstar's operating condition and future business prospects from the investing public and

2    supporting the artificially inflated price of its common stock.  As demonstrated by defendants'

3    overstatements and misstatements of the Company's business, operations, and earnings

4    throughout the Class Period, defendants, if they did not have actual knowledge of the

5    misrepresentations and omissions alleged, were deliberate in failing to obtain such knowledge by

6    deliberately refraining from taking those steps necessary to discover whether those statements

7    were false or misleading.

8         61.    As a result of the dissemination of the materially false and misleading information

9    and failure to disclose material facts, as set forth above, the market price of Coinstar common

10   stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices

11   of Coinstar's common stock was artificially inflated, and relying directly or indirectly on the

12   false and misleading statements made by defendants, or upon the integrity of the market in which

13   the shares trade, and/or on the absence of material adverse information that was known to or

14   deliberately disregarded by defendants but not disclosed in public statements by defendants

15   during the Class Period, plaintiff and the other members of the Class acquired Coinstar common

16   stock during the Class Period at artificially high prices and were damaged thereby.

17        62.    At the time of said misrepresentations and omissions, plaintiff and other members

18   of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the

19   other members of the Class and the marketplace known the truth regarding the problems that

20   Coinstar was experiencing, which were not disclosed by defendants, plaintiff and other members

21   of the Class would not have purchased or otherwise acquired their Coinstar common stock, or, if

22   they had acquired such common stock during the Class Period, they would not have done so at

23   the artificially inflated prices which they paid.

24        63.    By virtue of the foregoing, defendants have violated Section 10(b) of the

25   Exchange Act, and Rule 10b-5 promulgated thereunder.

26

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

64.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## COUNT II

### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT AGAINST INDIVIDUAL DEFENDANTS

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     The Individual Defendants acted as controlling persons of Coinstar within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68.     As set forth above, Coinstar and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 34
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

2    the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff

3    and other members of the Class suffered damages in connection with their purchases of the

4    Company's common stock during the Class Period.

5           **WHEREFORE**, plaintiff prays for relief and judgment, as follows:

6           A.     Determining that this action is a proper class action, designating plaintiff

7                  as Lead Plaintiff, and certifying plaintiff as a class representative under

8                  Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as

9                  Lead Counsel;

10          B.     Awarding compensatory damages in favor of plaintiff and the other Class

11                 members against all defendants, jointly and severally, for all damages

12                 sustained as a result of defendants' wrongdoing, in an amount to be

13                 proven at trial, including interest thereon;

14          C.     Awarding plaintiff and the Class their reasonable costs and expenses

15                 incurred in this action, including counsel fees and expert fees;

16          D.     Awarding extraordinary, equitable, and/or injunctive relief as permitted by

17                 law, equity, and the federal statutory provisions sued hereunder, pursuant

18                 to Rules 64 and 65 and any appropriate state law remedies to assure that

19                 the Class has an effective remedy; and

20          E.     Such other and further relief as the Court may deem just and proper.

21                            **JURY TRIAL DEMANDED**

22          Plaintiff hereby demands a trial by jury.

23

24

25

26

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 35
Case No. 11-CV-00133

HB  HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    Dated: January  24, 2011

2                                        HAGENS BERMAN SOBOL SHAPIRO LLP

3
                                         By      /s/ Steve W. Berman
4                                                Steve W. Berman
                                                 Karl P. Barth
5                                         1918 Eighth Avenue, Suite 3300
                                          Seattle, Washington  98101
6                                         Telephone:  (206) 623-7292
                                          Facsimile:   (206) 623-0594
7
                                         Local Counsel for Plaintiff
8
                                         KIM MILLER
9                                        **KAHN SWICK & FOTI, LLC**
                                         500 Fifth Avenue, Ste. 1810
10                                        New York, NY 10110
                                          Telephone: (212) 696-3730
11                                        Facsimile: (504) 455-1498
                                          Email: kim.miller@ksfcounsel.com
12
                                         LEWIS KAHN
13                                       **KAHN SWICK & FOTI, LLC**
                                         206 Covington Street
14                                        Madisonville, Louisiana 70447
                                          Telephone: (504) 455-1400
15                                        Facsimile: (504) 455-1498
                                          Email: lewis.kahn@ksfcounsel.com
16
                                         Attorneys for Plaintiff
17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT FORVIOLATIONS
OF FEDERAL SECURITIES LAWS  - 36
Case No. 11-CV-00133



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  420897 v1