1

2

3

4

5

6

**THE HONORABLE MARSHA J. PECHMAN**

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   IN RE COINSTAR INC. SHAREHOLDER
     DERIVATIVE LITIGATION

11

12

     This Document Relates To:

13

     THE DERIVATIVE LITIGATION

14

15

16

Master File No.  2:11-cv-00133 MJP

**DEFENDANTS' SUPPLEMENTAL
SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT**

17

18

19

20

21

22

23

24

25

26

27

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

**TABLE OF CONTENTS**

**Page**

I.    THE PROPOSED SETTLEMENT IS THE RESULT OF A GOOD FAITH,
      ARM'S-LENGTH NEGOTIATION FREE FROM COLLUSION ...................................1

II.   THE PROPOSED SETTLEMENT CONTAINS CORPORATE GOVERNANCE
      CHANGES THAT BENEFIT THE COMPANY AND ADDRESS THE
      ALLEGATIONS IN THE CONSOLIDATED COMPLAINT...........................................3

      A.    Audit Committee Charter Amendments Concerning Independence of the
            Company's Internal Audit Function ........................................................ 3

      B.    Board Resolutions Concerning Insider Trading Controls....................................... 6

      C.    These Corporate Governance Changes Constitute a Corporate Benefit that
            May Properly Serve as Consideration for the Derivative Litigation
            Settlement ............................................................................................. 8

III.  OTHER FACTORS SUPPORT PRELIMINARY APPROVAL OF THE
      PROPOSED SETTLEMENT ...............................................................................9

      A.    The Proposed Settlement Provides a Net Benefit to the Company ...................... 9

      B.    The Proposed Settlement Provides Coinstar with Complete Peace, Avoids
            the Costs of Continued Litigation, and Allows Management to Focus Its
            Attention and Energy on the Company................................................................ 11

      C.    Coinstar's Board of Directors Unanimously Approved the Proposed
            Settlement As Fair, Just and Adequate, and in the Best Interests of the
            Company and Its Shareholders ............................................................................ 12

IV.   THE COURT HAS DISCRETION TO DETERMINE THE APPROPRIATE
      ATTORNEYS' FEES IN LIGHT OF THE CORPORATE GOVERNANCE
      CHANGES ACHIEVED BY PLAINTIFFS' COUNSEL.................................................13

CONCLUSION.................................................................................................13

1

**TABLE OF AUTHORITIES**

2
<u>Page</u>

3
**CASES**

4
*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993).....................................................8, 9, 12

5
*Fischman v. Wexler*, 309 F. Supp. 976 (D. Del. 1970) ...........................................................13

6
*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) .................................................8

7
*In re Apple Computer, Inc. Deriv. Litig.*, No. C 06-4128(JF), 2008 WL 4820784
    (N.D. Cal. Nov. 5, 2008)..........................................................................................2

8

9
*In re NVIDIA Corp. Deriv. Litig.*, No. C-06-06110-SBA, 2008 WL 5382544
    (N.D. Cal. Dec. 22, 2008) ...............................................................................2, 9, 11

10
*In re Oracle Sec. Litig.*, 852 F. Supp. 1437 (N.D. Cal. 1994) ........................................13

11
*Lewis v. Anderson*, 692 F.2d 1267 (9th Cir. 1982) .................................................8, 13

12
*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) .........................................8, 11, 12

13
*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) ...................................................13

14
*Sved v. Chadwick*, 783 F. Supp. 2d 851 (N.D. Tex. 2009) .......................................13

15
*Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162 (Del. 1989)...............................8, 13

16
*Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2010 WL 363012
    (N.D. Cal. Sept. 14, 2010) .......................................................................................2, 8

17
*Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986).................................................8, 11

18
**RULES**

19
Federal Rule of Civil Procedure Rule 23.1(b) ..............................................................1

20

21

22

23

24

25

26

27

1    On May 25, 2012, pursuant to Federal Rule of Civil Procedure Rule 23.1(b), this Court

2    conducted a hearing on plaintiffs' unopposed motion for preliminary approval of the settlement

3    of this shareholder derivative action (Docket No. 129).  During that preliminary approval

4    hearing, the Court requested that the parties submit additional information concerning the

5    proposed settlement, including its terms.  On that same date, the Court issued an Order directing

6    the parties to make these submissions within 30 days (Docket No. 134).  Defendants hereby

7    respectfully submit this supplemental submission, along with its accompanying declaration and

8    exhibits, in order to answer the questions posed to defendants' counsel by the Court during the

9    preliminary approval hearing.[1]  Defendants submit that this additional information provides

10   ample support for preliminary approval of the proposed settlement.

11
12
**I.    THE PROPOSED SETTLEMENT IS THE RESULT OF A GOOD FAITH, ARM'S-LENGTH NEGOTIATION FREE FROM COLLUSION**

13   On September 20, 2011, counsel for the derivative plaintiffs in the federal and state

14   derivative actions, counsel for the plaintiffs in the parallel securities class action, and counsel for

15   the defendants in these actions participated in an all-day mediation session.  This mediation

16   session did not produce a settlement in either the securities class action or the derivative actions.

17   On January 11, 2012, the parties in the securities class action entered into a confidential

18   Memorandum of Understanding to settle that action.  On February 17, 2012, the parties in the

19   securities class action filed a formal stipulation of settlement with the Court.  The Court has

20   preliminarily approved that settlement and has set a final approval hearing for August 10, 2012.

21   In mid-January 2012, following execution of the Memorandum of Understanding to settle

22   the class action, counsel for the parties in the federal and state derivative actions recommenced

23   settlement negotiations that ultimately resulted in the filing of a Stipulation of Settlement with

24   the Court on April 27, 2012 (Docket No. 128).  The parties conducted the settlement negotiations

25
26   [1] Defendants understand that plaintiffs are also making a supplemental submission to the Court that
     answers the questions posed to plaintiffs' counsel by the Court during the preliminary approval hearing,
27   and addresses additional issues raised by the Court both before and during that hearing.

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-cv-00133 MJP                    -1-                    **WILSON SONSINI GOODRICH & ROSATI**
                                                                    701 Fifth Avenue, Suite 5100
                                                                    Seattle, WA  98104-7036
                                                                    Tel: (206) 883-2500
                                                                    Fax: (206) 883-2699

1   in two separate and distinct phases.  The first phase dealt solely with the negotiation of corporate

2   governance changes that ultimately resulted in the corporate governance measures set forth in

3   Section 2 of the Stipulation of Settlement.  The second phase dealt solely with the negotiation of

4   the attorneys' fees set forth in Section 5 of the Stipulation of Settlement.  At no time during the

5   first phase of the settlement negotiations did counsel for the parties negotiate attorneys' fees.

6   Only after completing the negotiation of the corporate governance measures did counsel for the

7   parties, with the substantial assistance of a mediator, begin a negotiation of attorneys' fees.  *See*

8   Stipulation of Settlement, §§ 3.2 (attorneys' fees "separately negotiated"), 5.1 (attorneys' fees

9   negotiated "[a]fter negotiating the Corporate Governance Reforms") (Docket No. 128); Motion

10  and Memorandum of Points and Authorities in Support of Preliminary Approval of Derivative

11  Settlement ("Motion") at 10 (attorneys' fees negotiated "[a]fter negotiating the principal terms of

12  the Settlement") (Docket No. 129).  This separate attorneys' fee negotiation was successfully

13  completed through the use of a double-blind mediator's proposal of $750,000, subject to Court

14  approval.

15          The bifurcated process employed by the parties with the assistance of a mediator, and the

16  extensive back-and-forth as to both corporate governance changes and attorneys' fees, is

17  evidence of a good faith, arm's-length negotiation devoid of any collusion, and supports

18  preliminary approval of the settlement.  *See Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-

19  02361 JSW, 2010 WL 363012, at *6 (N.D. Cal. Sept. 14, 2010) (granting final approval of

20  derivative settlement, in part, because "[t]he parties did not reach an agreement on fees until after

21  the substantive terms had been negotiated and did so only with the assistance of a neutral third

22  party"); *In re Apple Computer, Inc. Deriv. Litig.*, No. C 06-4128 (JF), 2008 WL 4820784, at *3

23  (N.D. Cal. Nov. 5, 2008) (approving derivative settlement and finding that the settlement

24  negotiations were conducted at arm's-length, in part, because the parties first agreed to the

25  corporate governance changes, and only then negotiated attorneys' fees); *see also In re NVIDIA*

26  *Corp. Deriv. Litig.*, No. C-06-06110-SBA, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008)

27

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-2-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1  (finding settlement to be "the result of good faith arm's-length bargaining" without "fraud or

2  collusion" based upon a settlement negotiation that involved a mediator).

3  **II.   THE PROPOSED SETTLEMENT CONTAINS CORPORATE GOVERNANCE CHANGES THAT BENEFIT THE COMPANY AND ADDRESS THE**

4       **ALLEGATIONS IN THE CONSOLIDATED COMPLAINT**

5       Section 2 of the Stipulation of Settlement contains the corporate governance changes

6  negotiated as part of the settlement.  During the preliminary approval hearing, the Court asked

7  defendants to provide in a supplemental submission more information about how these changes

8  differed from the status quo, how Coinstar, Inc. ("Coinstar" or the "Company") would

9  implement them, and the associated costs to the Company.

10      If the Court approves the settlement, Coinstar would implement the settlement by

11  passing board resolutions that amend the Audit Committee Charter, direct that the Company's

12  head of internal audit operate independently from management and report directly to the Audit

13  Committee, and direct that the Company's Chief Legal Officer review and update those

14  individuals who or positions that are subject to the Company's stock trading certification, pre-

15  clearance and blackout procedures, and report any violations of Coinstar's Insider Trading Policy

16  to the Board no later than the Board's next regularly scheduled meeting.  *See* "[Proposed]

17  Resolutions Implementing Corporate Governance Measures in Connection with Settlement of

18  Shareholder Derivative Actions" attached as Exhibit A to the Declaration of Gregory L. Watts in

19  Support of Motion for Preliminary Approval of Derivative Settlement ("Watts Decl., Ex. A").

20

21      **A.   Audit Committee Charter Amendments Concerning Independence of the Company's Internal Audit Function**

22      The Consolidated Complaint alleged that Coinstar's public revenue and earnings

23  forecasts were not supported by the Company's internal forecasts, that the Company "was not

24  able to properly and effectively manage its inventory," and that the Company "lacked adequate

25  internal controls."  Consolidated Complaint ("CC") ¶¶ 18, 19, 75.  The individual defendants

26  deny these allegations.  *See* Stipulation of Settlement, § III.  Nonetheless, as part of this

27  settlement, Coinstar has agreed to pass resolutions that ensure the independence of the

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-3-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1  Company's internal auditors — a group designed to provide independent, objective evaluations

2  of and correct weaknesses in a company's risk management, internal controls, and corporate

3  governance processes.  These resolutions ensure that Coinstar's internal audit function is free to

4  conduct its internal audits without interference by management and report its results directly to

5  the Company's Audit Committee.

6          First, Coinstar's Board of Directors would pass a resolution requiring that Coinstar's

7  head of internal audit operate independently from management and report directly to the Audit

8  Committee:

9               RESOLVED FURTHER, that the Company's head of internal audit shall
                operate independently in relation to the Company's management and shall
10              report directly to the Audit Committee.

11  Watts Decl., Ex. A.  This is a change from the status quo.  There is no written requirement and

12  the Board has not previously passed a resolution ensuring that the head of internal audit operate

13  independently from management and report directly to the Board.  While there is no indication

14  that management has ever sought to unduly influence or obstruct the work of the Company's

15  internal auditors, as a matter of good governance, it make sense to expressly establish that this

16  function will operate independently of management and report directly to the Audit Committee.

17  Implementation of this change will not require any additional expenditures or hiring by the

18  Company.

19          Second, Coinstar's Board of Directors would pass a resolution amending the Audit

20  Committee Charter to state clearly that it is the Audit Committee's oversight responsibility to

21  ensure that the head of internal audit and company management adhere to this policy of

22  independence, that the head of internal audit meet separately with the Audit Committee in

23  executive session each quarter, and that such meetings include a report relating to control

24  weaknesses or deficiencies, related risk exposures, and the Company's progress on remediation

25  of any control weakness or deficiencies:

26

27

*(e)     Internal Audit Review*

Review the responsibilities, functions and performance of the Company's internal audit department, including internal audit plans, budget, and the scope and results of internal audits.

Provide that Company management and the Company's head of internal audit comply with the Company policy adopted by the Board of Directors that the head of internal audit shall operate independently in relation to the Company's management and reports directly to the Board's Audit Committee.

Meet in a separate executive session with the Company's head of internal audit during each of the Committee's four quarterly meetings for review of the Company's periodic reports.  These separate executive sessions shall include a report by the Head of Internal Audit relating to control weaknesses or deficiencies, related risk exposures, and the Company's progress on remediation of any control weaknesses or deficiencies.

4.     Meetings

The Committee shall establish a meeting calendar annually, which shall include at least four quarterly meetings for the year.  These four quarterly meetings shall include, in addition to other items, a review of the Company's annual and interim financial statements and disclosures, management letters or internal control letters issued or proposed to be issued by the independent auditor, schedules of unadjusted differences issued by the independent auditor, reports issued by the independent auditor regarding management's assessment of the Company's internal controls, and any reports by the Company's head of internal audit, as well as any related independent or internal auditor attestations, certifications or reports.

The Committee may hold such other meetings as are necessary or appropriate in order for the Committee to fulfill its responsibilities. In the absence of a member designated by the Board to serve as Chair, the members of the Committee may appoint from among their number a person to preside at their meetings.

The Committee shall meet at least quarterly in separate executive sessions with management, the head of internal audit and the independent auditor (collectively, "Executive Session Groups") to discuss matters that the Committee or the Executive Session Groups believe warrant Committee attention.

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-5-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1  Watts Decl., Ex. A; Audit Committee Charter, Watts Decl., Ex. B at 5, 7 (amendments shown in

2  tracked changes).  As evidenced by the amendment itself, this is a change from the status quo.

3  Implementation of this change will not require any additional expenditure by the Company.

4      **B.    Board Resolutions Concerning Insider Trading Controls**

5          The Consolidated Complaint alleged that certain director and officer defendants engaged

6  in insider trading by "capitalizing on their knowledge" that the Company's stock price was

7  inflated due to, among other things, the release of purportedly unachievable revenue and

8  earnings forecasts and purportedly false statements about the impact of the 28-day delay on new

9  releases with certain movie studios on Coinstar's business.  CC ¶¶ 75, 84.  The individual

10  defendants deny these allegations.  *See* Stipulation of Settlement, § III.  Nonetheless, as part of

11  this settlement, Coinstar has agreed to pass two resolutions that improve the Company's

12  safeguards to prevent insider trading.

13          First, Coinstar's Board of Directors would pass a resolution requiring that the Company's

14  Chief Legal Officer report any violations of the Company's Insider Trading Policy to the Board

15  no later than its next regularly scheduled meeting:

16              RESOLVED FURTHER, that the Company's Insider Trading Policy
               compliance officer (the Company's Chief Legal Officer as of the time this
17              resolution is adopted) shall report any violations of the Insider Trading
               Policy to the Board no later than the Board's next regularly scheduled
18              meeting.

19  Watts Decl., Ex. A.  This is a change from the status quo.  Currently, there is no written

20  requirement in the Insider Trading Policy or elsewhere directing the Chief Legal Officer (the

21  Insider Trading Policy compliance officer) to make such a report to the Board.  *See* Insider

22  Trading Policy, Watts Decl., Ex. C.  Ensuring that the Chief Legal Officer reports violations of

23  the Insider Trading Policy to the Board in this manner improves the Board's oversight and

24  allows it to promptly address problems or concerns.  Implementation of this change will not

25  require any additional expenditure by the Company.

26          Second, Coinstar's Board of Directors would pass a resolution directing the Company's

27  Chief Legal Officer, in consultation with other key executives and personnel, to review and

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP                    -6-          **WILSON SONSINI GOODRICH & ROSATI**
                                                              701 Fifth Avenue, Suite 5100
                                                              Seattle, WA  98104-7036
                                                              Tel: (206) 883-2500
                                                              Fax: (206) 883-2699

1  revise a schedule of individuals who or positions that have access to material non-public

2  information and should be subject to the pre-clearance procedures, blackout procedures and the

3  certification requirement of the Insider Trading Policy:

> RESOLVED FURTHER, that the Company's Chief Legal Officer, in consultation with Company management, the Company's head of internal of audit, and the Company's stock administrator, within thirty (30) days of this resolution is directed to review Schedule 1 to the Addendum to the Company's Insider Trading Policy for Directors, Executive Officers, Designated Employees and Consultants and modify Schedule 1 to ensure that those individuals who or positions that have access to material non-public information about the Company are included in Schedule 1 and subject to the Addendum's pre-clearance procedures, blackout procedures, and certification requirement.

10  Watts Decl., Ex. A.  The pre-clearance procedures require individuals on the schedule, and their

11  family members, to obtain pre-clearance from Coinstar's Chief Legal Officer before engaging in

12  any transaction involving Coinstar's securities.  Watts Decl., Ex. C, Addendum at 1.  The

13  blackout procedures prohibit individuals on the schedule from trading in the Company's

14  securities during the period two weeks prior to the end of the quarter and ending after the second

15  full business day following the release of the Company's earnings for that quarter.  *Id.*,

16  Addendum at 2.  The certification procedure requires all individuals on the schedule to certify

17  their understanding of, and intent to comply with, the Company's Insider Trading Policy and the

18  Addendum.  *Id.*, Addendum at 4.

19       This review and update of Schedule 1 also is a change from the status quo.  While the

20  Addendum to the Insider Trading Policy states that the Company "may from time to time

21  designate other individuals who or positions that are subject to this addendum and will amend

22  Schedule 1 from time to time as necessary to reflect such changes," there is no express

23  requirement that it do so or that it do so now.  *Id.*, Addendum at 1.  Implementation of this

24  change will not require any additional expenditure by the Company.

25

26

27

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-7-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1

**C.      These Corporate Governance Changes Constitute a Corporate Benefit that May Properly Serve as Consideration for the Derivative Litigation Settlement**

2

3        Courts have long recognized that corporate governance changes such as those achieved

4   here provide a benefit to public companies, and can serve as the basis for the settlement of

5   derivative litigation.  "While less tangible than the recovery of money damages," corporate

6   governance reforms can be "sufficiently beneficial to a corporation . . . ."  *Lewis v. Anderson*,

7   692 F.2d 1267, 1271 (9th Cir. 1982).  As the Fifth Circuit stated in *Maher v. Zapata Corp.*, 714

8   F.2d 436, 466 (5th Cir. 1983), "a settlement may fairly, reasonably, and adequately serve the best

9   interest of a corporation, on whose behalf the derivative action is brought, even though no direct

10  monetary benefits are paid by the defendants to the corporation."  *See also Tandycrafts, Inc. v.*

11  *Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) (holding that a corporate benefit "need not be

12  measurable in economic terms" and finding that "[c]hanges in corporate policy" can constitute a

13  benefit); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (affirming derivative

14  settlement and finding that "[d]espite the difficulties they pose to measurement, nonpecuniary

15  benefits to the corporation may support a settlement"); *Granada Invs., Inc. v. DWG Corp.*, 962

16  F.2d 1203, 1207 (6th Cir. 1992) (changes in corporate governance supported derivative

17  settlement); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (same, "[i]nfluencing the

18  future conduct of management may serve the interests of the corporation as fully as a recovery

19  for past misconduct"); *Wixon*, 2010 WL 363012 at *3, 6 (court granted final approval of

20  derivative settlement in which corporate governance changes constituted the benefit to the

21  corporation).

22        In *Zimmerman*, a derivative action involving allegations that Martin Marietta directors

23  breached their fiduciary duties in running up a debt of $900 million in defense of a tender offer

24  for Martin Marietta's stock by Bendix, the Fourth Circuit affirmed the district court's approval of

25  a derivative settlement in which the company agreed to write a statement of policy providing

26  guidelines to the company's directors to consider in the event of future unsolicited tender offers.

27  800 F.2d at 391-92.

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-8-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1     In *Bolger*, a derivative action involving allegations that one of Bell Atlantic's subsidiaries

2  engaged in consumer fraud that resulted in the payment of $40 million in customer refunds to

3  resolve a lawsuit brought by the Pennsylvania Attorney General, the Third Circuit affirmed the

4  district court's approval of a derivative settlement that involved disclosure of information about

5  the underlying litigation, the implementation of a procedure whereby sales or marketing

6  programs would be reviewed by a senior manager in consultation with the legal department to

7  ensure compliance with applicable laws and regulations, and the payment of approximately

8  $420,000 in attorneys' fees.  2 F.3d at 1307, 1311.

9     In *NVIDIA*, a derivative action involving serious allegations of stock options backdating,

10  the district court preliminarily approved a settlement that included an agreement that NVIDIA's

11  board of directors would "adopt  resolutions and amend committee charters" that would remain

12  in effect for three years.  2008 WL 5382544, at *1 (the settlement also included the repricing and

13  cancellation of stock options).

14
15  **III.    OTHER FACTORS SUPPORT PRELIMINARY APPROVAL OF THE
        PROPOSED SETTLEMENT**

16     **A.    The Proposed Settlement Provides a Net Benefit to the Company**

17     The direct monetary costs to Coinstar associated with the proposed settlement are *de*

18  *minimis* relative to the benefits achieved.  The D&O insurance carrier for the policy covering

19  these claims against Coinstar and the individual defendants has agreed to pay the entire

20  attorneys' fee award of $750,000, subject to Court approval.

21     In the Court's December 22, 2011 Order on Motion to Stay or Alternatively Defer Filing

22  of Amended Complaint (Docket No. 113), the Court ordered plaintiffs "to pay the attorneys' fees

23  Defendants incurred on the initial motion dismiss" if plaintiffs elected to file an amended

24  complaint.  *Id.* at 4.  By deciding to settle this litigation before plaintiffs filed an amended

25  complaint, defendants understood that they effectively were relinquishing their right to this

26
27

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-9-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

reimbursement.[2]  Defendants spent $183,086 on attorneys' fees in connection with briefing and arguing the motion to dismiss.  Watts Decl., ¶ 9.  These fees were paid by Coinstar, but have since been reimbursed by the D&O insurance carrier.  If plaintiff had filed an amended complaint, plaintiffs' payment to defendants would have been forwarded to the D&O carrier since it has already reimbursed the Company.

If the settlement is preliminarily approved, Coinstar will provide notice of the proposed settlement by publishing a short-form notice in Investors' Business Daily, filing a long-form notice as an 8-K with the SEC, which will thereafter be available on the SEC's website, and placing the long-form notice in the Investor Relations section of Coinstar, Inc.'s website.  The total cost of this notice is approximately $4,000 and will be reimbursed by the D&O insurance carrier.  If the settlement is finally approved, Coinstar will implement corporate governance changes that do not require any additional expenditures by the Company.

| Item | Cost | Paid by Insurance | Cost to Coinstar |
|---|---|---|---|
| Proposed Attorneys' Fees Award | $750,000 | ($750,000) | $0 |
| Foregone Payment by Plaintiffs for Briefing and Oral Argument on Motion to Dismiss | $183,086 | ($183,086) | $0 |
| Publication of Notice Costs | $4,000 | ($4,000) | $0 |
| Cost of Implementing Corporate Governance Measures | $0 | ($0) | $0 |
| **Total** | **$937,086** | **($937,086)** | **$0** |

---

[2] If the Court does not approve the settlement and plaintiffs file an amended complaint (after obtaining leave of Court to do so), plaintiffs would be required to pay defendants $183,086  in reimbursement for their attorneys' fees incurred on the initial motion to dismiss, as directed by the Court in its December 22, 2011 Order.

SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-10-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1    **B.**    **The Proposed Settlement Provides Coinstar with Complete Peace, Avoids the**
             **Costs of Continued Litigation, and Allows Management to Focus Its**
2            **Attention and Energy on the Company**

3            Among the principal reasons Coinstar and the individual defendants agreed to settle this

4    derivative litigation (both state and federal) at this time and on these terms was to avoid the

5    distractions to the Company and its management associated with ongoing complex civil

6    litigation, as well as the related litigation fees and expenses.  These "are important and valid

7    reasons for seeking a settlement, and may warrant its approval."  *Zapata*, 714 F.2d at 467

8    (internal citation omitted); *see also Zimmerman*, 800 F.2d at 392 (holding that the derivative

9    settlement was "favored" because "the resources of litigants and courts are saved" and

10   "management can return its attention and energy from the courtroom to the corporation itself");

11   *NVIDIA*, 2008 WL 5382544 at *3 ("by reaching a settlement, Defendants have avoided

12   significant risks and costs, including the costs associated with continued litigation, potential

13   liability and exposure to damages, and the distraction that arises as a result of litigation").

14          If this settlement is finally approved, it will settle and end not only this litigation, but also

15   consolidated derivative litigation pending in King County Superior Court.  The Stipulation of

16   Settlement, signed by counsel for the plaintiffs in the federal and state actions, dictates in Section

17   3.3 that within ten days of final approval of the settlement "the Settling Parties and their counsel

18   shall jointly apply to the State Court for an order dismissing with prejudice the State Action, and

19   shall use their reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause

20   to be done, all things reasonably necessary, proper and appropriate to secure dismissal with

21   prejudice of the State Action."  The consolidated state derivative action has effectively been

22   stayed in favor of this litigation.  A consolidated amended complaint has not even been filed.

23   The pre-consolidation complaints, however, make the very same allegations against the same

24   defendants as the Consolidated Complaint here, including the allegations that Coinstar's public

25   revenue and earnings forecasts were not supported by the Company's internal forecasts, that the

26   Company "was not able to properly and effectively manage its inventory," that the Company

27   "lacked adequate internal controls," and that defendants engaged in insider trading.  *See* Watts

1   Decl., Ex. D ¶¶ 9, 51-52 (Augustiniak Complaint); Ex. E ¶¶ 9, 51-52  (Nadley Complaint); Ex. F.

2   ¶¶ 46, 47, 50-52 (Willis Complaint).

3          Absent a settlement of this litigation, defendants may have been subject to costly and

4   complex derivative litigation in two courts.  At the very least, defendants would have been

5   required to file two motions to dismiss – a second motion to dismiss in the federal action and an

6   initial motion to dismiss in the state action – before obtaining dismissal.  If one of these cases

7   survived a motion to dismiss, Coinstar and the individual defendants would have been

8   confronted with document and deposition discovery, followed by numerous pre-trial and

9   dispositive motions, and a trial.  Payment of plaintiffs' attorneys' fees up to $750,000 made

10  sense because the likely fees and costs associated with discovery, dispositive motions, trial, post-

11  trial motions, and dealing with an appeal would greatly exceed that amount.  *See Bolger*, 2 F.3d

12  at 1313 n.14.

13         In short, the corporate governance reforms, the minimal costs of the settlement to the

14  Company, and the benefits to the Company of avoiding the costs and distractions to management

15  of continued litigation support preliminary approval of this settlement.  *See id.* ("even if we

16  attach a small figure to the value of the corporate governance changes (as [the objector] urges),

17  this small value may be fair consideration" in light of any expected recovery net of trial costs).

18         **C.     Coinstar's Board of Directors Unanimously Approved the Proposed
                Settlement As Fair, Just and Adequate, and in the Best Interests of the
19              Company and Its Shareholders**

20         On April 19, 2012, Coinstar's entire Board of Directors met and reviewed, considered

21  and discussed the proposed settlement.  The Board then unanimously passed a resolution that

22  approved the proposed settlement and the terms of Stipulation of Settlement as "fair, just and

23  adequate, and in the best interests of the Company and its shareholders."  Resolution Approving

24  Settlement of Shareholder Derivative Action, Watts Decl., ¶ 8, Ex. G.

25

26

27

**IV.   THE COURT HAS DISCRETION TO DETERMINE THE APPROPRIATE ATTORNEYS' FEES IN LIGHT OF THE CORPORATE GOVERNANCE CHANGES ACHIEVED BY PLAINTIFFS' COUNSEL AND OTHER FACTORS**

Under both federal and Delaware law, a court may award attorneys' fees and expenses to derivative counsel when the suit confers a corporate benefit. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 394-96 (1970); *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) ("[t]he court must thus first determine the total benefit that Oracle received from the derivative suit and then determine, from that benefit, a reasonable attorney fee award for derivative counsel")*; Tandycrafts*, 562 A.2d at 1165 ("[c]hanges in corporate policy . . . may justify an award of counsel fees"). Here, defendants agreed in Section 5.1 of the Stipulation of Settlement to pay attorneys' fees of $750,000, subject to Court approval. While defendants do not suggest that the amount agreed upon here is excessive or inappropriate, "the specific fee amount to be granted to derivative counsel is still left to the broad discretion of the court." *Oracle*, 852 F. Supp. at 1445 (awarding fees of $525,000 despite agreement by defendants not to oppose a fee request of up to $750,000); *see Lewis*, 692 F.2d at 1269, 1272 (affirming district court's award of attorneys' fees below the amount requested by derivative counsel); *Sved v. Chadwick*, 783 F. Supp. 2d 851, 865 (N.D. Tex. 2009) (noting that "the validity of the derivative settlement does not depend on approval or payment" of the requested attorneys' fees and indicating that court would "award an amount that it deems appropriate in consideration of the relevant factors"); *Fischman v. Wexler*, 309 F. Supp. 976, 979 (D. Del. 1970) (approving derivative settlement and awarding attorneys' fees commensurate with the benefit of the corporate governance changes to the company despite agreement by defendants to not contest any attorneys' fee award of a larger amount).

**CONCLUSION**

Defendants respectfully submit that this additional information favors preliminary approval of the proposed settlement. If the Court agrees and decides to preliminarily approve the settlement, counsel for the defendants will work with plaintiffs' counsel to revise the shareholder notice to include this additional information.

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-13-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1    Dated:  June 22, 2012

**WILSON SONSINI GOODRICH & ROSATI**

2

s/Gregory L. Watts

Barry M. Kaplan, WSBA #8661

3    Gregory L. Watts, WSBA #43995

Emily Schlesinger, WSBA #43661

4    **WILSON SONSINI GOODRICH & ROSATI**

701 Fifth Avenue, Suite 5100

5    Seattle, WA  98104-7036

Telephone:  (206) 883-2500

6    Fax:  (206) 883-2699

Email: bkaplan@wsgr.com

7    Email: gwatts@wsgr.com

Email: eschlesinger@wsgr.com

8

Attorneys for Defendants Arik A. Ahitov, David M.

9    Eskenazy, Robert D. Sznewajs, Robert B. Woodard,

Deborah L. Bevier, Paul D. Davis, Gregg A. Kaplan,

10   Galen Smith, J. Scott Di Valerio, and Nominal

Defendant Coinstar

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

SUPPLEMENTAL SUBMISSION IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
CASE NO. 2:11-CV-00133 MJP

-14-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on June 22, 2012, I filed the foregoing with the Clerk of the Court

3   using the CM/ECF system, and served all parties via ECF.

4   Dated:  June 22, 2012

5

6                                        s/Gregory L. Watts_____
                                         Gregory L. Watts, WSBA #43995
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27